2001 WY 32

Pamela Lynn BEAVIS, by Sylvia M. BEAVIS and Randy S. Beavis, parents and next friends, and Sylvia M. Beavis and Randy S. Beavis, Appellants, (Plaintiffs),

v.

CAMPBELL COUNTY MEMORIAL HOSPITAL; Mitchell F. Horan, M.D.; and Deb Hazlett, Emt, Appellees, (Defendants).

No. 99–235.

Supreme Court of Wyoming.

March 26, 2001.

Rehearing Denied April 17, 2001.

Representing Appellants: Walter Urbigkit of Frontier Law Center, Cheyenne, WY.

Representing Appellees Campbell County Memorial Hospital and Ms. Hazlett: John G. Fenn of Yonkee & Toner, Sheridan, WY.

Representing Appellee Dr. Horan: Robert M. Shively and Amy M. Taheri of Shively Law Offices, P.C., Casper, WY.

Before LEHMAN, C.J., and THOMAS,* MACY,** GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

[¶ 1]   In this medical malpractice case, the plaintiffs alleged that an employee of Campbell County Memorial Hospital improperly injected allergy medication into Pamela Beavis' right buttock, causing tissue damage and residual injuries.   After a five-day trial, a Campbell County jury returned a defense verdict.   On appeal, the Beavises contend the district court erred by refusing standard of care testimony;   by denying them the opportunity to litigate their claims against the hospital and the supervising physician;   and in refusing evidence that Deb Hazlett, who administered the injection, was not qualified to do so.   Finding no error, we affirm.

* Concurred prior to retirement.

** Retired June 2, 2000.

## *ISSUES*

[¶ 2] The Beavises present three issues for review:

1. Whether the Court committed error in trial time decision to exclude all oral or documentary evidence of the lack of training, experience, expertise, or qualifying certification as justified by hypothetically creating an untrue assumed nurse's status for the hospital employee who administered the injury causing medical injection?

2. Whether the Court committed error after having created the artificial status of a nurse for the health care provider, Hazlett, to then in trial time decision restrict or deny opportunity for Plaintiff's presentation of expert or factual testimony, as a standard of care opinion which evidence would have been that even for a nurse, that the injection was improperly administered?

3. Whether the Court committed error in decision made immediately before the trial started to bifurcate the case to exclude individual liability claims against Campbell County Memorial Hospital and Mitchell Horan, M.D. from the first trial and then without pleadings or providing any hearing to apply res judicata (or judicial estoppel) to the CCMH and Horan bifurcated claims by entry of a general judgment against Plaintiffs on all claims based on the adverse Hazlett liability verdict?

In their brief, appellees Campbell County Memorial Hospital and Deb Hazlett articulate the issues in this fashion:

1. Did the trial court abuse its discretion regarding evidentiary rulings immediately prior to and during trial?

A. Did the trial court abuse its discretion in bifurcating the claim of negligence against Deb Hazlett from claims against Campbell County Memorial Hospital and Dr. Horan for negligent supervision and training of Deb Hazlett and thereby limiting irrelevant and prejudicial character evidence from being used to establish negligence of Deb Hazlett?

B. Did the trial court abuse its discretion in limiting the expert testimony of Sylvia Beavis to what she testified to in her deposition and what was set forth in Plaintiffs' witness designation?

Appellee Mitchell Horan, M.D. presents argument on one issue:

Whether the trial court committed error when it bifurcated the trial of a medical malpractice case in order to allow the jury to consider the threshold question of whether the standard of care had been breached[?]

## *FACTS*

[¶ 3] This medical malpractice case arises from an allergy medication injection into the posterior of Pamela Beavis. The Campbell County Memorial Hospital (CCMH) owns and operates the Wright Clinic in Wright, Wyoming. On June 27, 1995, Sylvia Beavis and her 13–year–old daughter Pamela went to the Wright Clinic for allergy related conditions, and Dr. Mitchell Horan examined both. For Pamela Beavis, Dr. Horan prescribed 30 mg of Kenalog, an allergy medication, to be injected into her right buttock. Deb Hazlett, a medical assistant employed at the Wright Clinic, was assigned the task of administering the intramuscular injection. Sylvia Beavis, who was present in the examination room when the injection was given, observed that, immediately after the injection, some of the drug migrated out of the injection site.

[¶ 4] Sylvia and Randy Beavis, individually and as their daughter's representatives, instituted this action on April 21, 1997. The Beavises alleged the injection was improperly administered, causing their daughter immediate tissue damage and residual injuries. They claimed damages for, *inter alia,* past and future medical expenses as well as pain and suffering. The Beavises named as defendants Deb Hazlett, Dr. Horan, and Campbell County Memorial Hospital. Against Hazlett, the Beavises alleged negligence in administering the injection. Against Dr. Horan, the Beavises alleged negligence in failing to properly supervise and train Hazlett. Finally, the Beavises alleged CCMH had been negligent in using an unqualified employee, Hazlett.

[¶ 5] A jury trial was held April 5–9, 1999. Prior to trial, the district court bifurcated the claim against Hazlett from the

claims against CCMH and Dr. Horan. As a result, the issues at trial were limited to whether Hazlett had properly performed the injection and what damages, if any, occurred as a result.

[¶ 6] The Beavises' factual theory was that the injection was given at an improper location and to an improper depth. They contended that, because of the location and depth, the Kenalog did not go deep into the muscle belly where it could be absorbed without damage. They asserted the Kenalog instead went only superficially into the gluteus muscle, and the protective sheath surrounding the muscle, the fascia, was injured as a result. In addition, the Beavises contended the fatty tissue surrounding the injection site was exposed to the Kenalog, causing damage. In closing argument, the Beavises' counsel asked the jury to award damages in the amount of $385,000.

[¶ 7] After deliberations, the jury returned a verdict finding that Hazlett had not fallen below the standard of care in administering the Kenalog injection to Pamela Beavis. Judgment was entered in favor of Hazlett, CCMH, and Dr. Horan. With respect to Dr. Horan, the Judgment provided:

> Plaintiffs' claims against Mitchell Horan, M.D. are dependent upon establishing negligence of Deb Hazlett. Having failed to establish negligence of Deb Hazlett, judgment is entered in favor of co-defendant Mitchell Horan, M.D.

The Beavises objected to the form of the judgment and moved for a new trial, but the objection was overruled and the motion was denied. The Beavises appealed.

### DISCUSSION

[¶ 8] In order to address the Beavises' first and third issues, which we will do in that order, we must examine the district court's rulings on those issues. At a pretrial conference held on August 24, 1998, CCMH admitted liability for the acts of both Deb Hazlett and Dr. Horan. *See* Wyo. Stat. Ann. §§ 1-39-109 & -110 (Lexis 1999). In a pre-trial order, the district court wrote:

> 7. MISCELLANEOUS: Campbell County Memorial Hospital admits vicarious liability for the acts of both Deb Hazlett and

Dr. Horan. Given that admission, the propriety of admitting evidence regarding qualifications, background and training of Deb Hazlett is challenged by defendants. [Plaintiffs' counsel] has requested and was allowed to respond in writing within forty five (45) days.

Counsel for the plaintiffs did file a memorandum on the issue, arguing that the evidence was relevant and raising issues regarding what standard of care would be applied to judge Hazlett's actions.

[¶ 9] On the first day of the April 1999 trial, these issues were resolved. Following off-the-record discussions, the district court had the following colloquy with counsel:

> THE COURT: ... [T]he hospital has agreed that the standard of care for Deb Hazlett is the same as the standard of care would be for a registered nurse or a physician or for anybody else appropriately qualified and trained to administer a shot.
>
> And accordingly, the defendants want to bifurcate the trial, go forward with a trial on whether or not the plaintiff can prove negligence on the administration of the shot and establishing the amount of damages that resulted from negligence, if there was any. And once that is established, and apparently the hospital's carrier is in a position to fully pay any damage award that would come down, and accordingly would make any issues of training moot.
>
> Given the defendants' posture, I guess I am wondering why we ought not go forward on that basis. And where we left it is giving [Beavises' counsel] an opportunity to respond. First of all, let me ask if I have correctly stated the defendants' position?
>
> [COUNSEL FOR CCMH & HAZLETT]: Yes, the standard of care is to give the shot properly, irrespective of the background, and the same will apply to a nurse or physician, if it is given properly.
>
> THE COURT: And I am not going to hear any argument that she met the standard of care, given her position?
>
> [COUNSEL FOR CCMH & HAZLETT]: We are not going to argue that she some-

how has a lesser standard of care because she does not have the same training.

[BEAVISES' COUNSEL]: I think you stated the standard of care is that of a nurse, and his response is the standard of care is somebody giving it properly. That raises the question of who determines the proper way to give the shot. And the way it was phrased by the Court, if that is the direction that it takes, we understand where we are going.

And there is one other subject we need to discuss briefly, because it relates to the standard of care and determination, but I don't want to get into this case now and have them say that somebody that has two weeks training and mislocates the shot is free from responsibility if a nurse would never have mislocated the spot because of the training the nurse has. If the nurse gives the testimony of the standard of care, we expect that to be the standard of care.

THE COURT: That is what I hear them saying.

[COUNSEL FOR CCMH & HAZLETT]: That is correct, Your Honor.

THE COURT: Given that, I don't see much point of getting into the issue of training and the supervision by Dr. Horan, and it appears what you are claiming is well under the policy limits. And if it is determined that Deb Hazlett was negligent and the jury establishes the damages, your client is going to be paid.

[¶ 10] Following jury selection, some confusion still existed regarding the course the trial would take. The Beavises' counsel asked for clarification, and the district court indicated nothing had been dismissed and that the case was simply bifurcated. The effect of the district court's decisions was to permit the plaintiffs to proceed with a trial on the issue of Hazlett's negligence before delving into the direct liability claims against CCMH for negligent hiring and Dr. Horan for negligent training and/or supervision of Hazlett. In accord with CCMH's admission of liability, the jury was instructed that Deb Hazlett was acting as an employee of CCMH at the time she treated Pamela Beavis and

that CCMH was, therefore, responsible for her acts or omissions.

### Exclusion of Hazlett's Qualifications

[¶ 11] In their first issue, the Beavises contend the district court erred in refusing evidence of Hazlett's alleged lack of competency, qualification, or certification to give the Kenalog injection. The Beavises argue it is unfair to apply what they consider a nurses' standard of care to Hazlett, yet not permit them to establish that Hazlett was not a nurse. The appellees respond, arguing the district court did not abuse its discretion in refusing the evidence because the only question for the jury was whether the injection had been properly administered and Hazlett's qualifications were thus irrelevant.

[¶ 12] We first look at the standard of care, upon which the jury was instructed in part:

Evidence has been received relating to the proper technique to be used in administering a Kenalog injection. Proper technique is the standard of care. It is the same for doctors, nurses and other health care professionals. That is the standard by which Deb Hazlett's actions are to be measured.

The Beavises did not object to this instruction. Normally, when a party fails to object to instructions in the trial court, those instructions become the law of the case, and appellate review is precluded unless plain or fundamental error can be found. *Goggins v. Harwood*, 704 P.2d 1282, 1289 (Wyo.1985); *Matter of Mora's Estate*, 611 P.2d 842, 846 (Wyo.1980); *Cox v. Vernieuw*, 604 P.2d 1353, 1357 (Wyo.1980); *Vinich v. Teton Constr. Co.*, 518 P.2d 137, 138 (Wyo.1974).

[¶ 13] The standard of care in a medical malpractice action is well established. In *Vassos v. Roussalis*, 625 P.2d 768, 772–73 (Wyo.1981), this court wrote:

A malpractice action is usually a form of a negligence action. It is in this instance. Accordingly, the elements necessary to sustain a negligence action must be here proven, i.e., a duty on the part of the defendant, failure to perform the duty proximately causing damage to plaintiff.

The determination of the standard of care or duty is a matter of law and not the province of the jury.

In this case, the existence of the physician-patient relationship established the duty. The standard is fixed as that which is required of a reasonable person in the light of all the circumstances. Some circumstances have acquired particular legal significance which make it possible for the court to fix a more specific standard.... A malpractice contention is also one of those circumstances. The more specific standard for malpractice actions is that a physician or surgeon must exercise the skill, diligence and knowledge, and must apply the means and methods, which would reasonably be exercised and applied under similar circumstances by members of his profession in good standing and in the same line of practice.

. . .

When the circumstances in which the fictitious reasonable person acts are within the common knowledge of the jury, the jury does not need assistance in comprehending the standard fixed by the court. But when such circumstances are not of such common knowledge, the jury must depend upon testimony of experts to explain the standard and thus prevent a conclusion based on conjecture and speculation. In other words, an additional question of fact must be answered when the circumstances are such that the reasonable person standard is not within the common knowledge of the jury.

(Citations omitted.) In this case, clearly a medical malpractice case, the Beavises present nothing to establish that the proper technique for performing an injection is within the common knowledge of the jury. Moreover, they present nothing to refute the in-

struction's premise that the standard of care to be applied to assess the propriety of an injection is the same regardless of whether the health care professional is a doctor, a nurse, or something else. This distinguishes the present case from *Parker v. Haller,* 751 P.2d 372, 376 (Wyo.1988), where the physician's assistant was to be held to the standard of care of a physician's assistant in determining whether his treatment and referral to a physician fell below the standard of care. Wyo. Stat. Ann. § 1–12–601 [1] also provides support for the standard of care instruction given in this case. Moreover, by failing to object to the standard of care instruction, the Beavises appeared content to hold Hazlett to the more exacting standard found in that instruction. They now argue it was the improper standard. The Beavises cannot have their cake and eat it too. We cannot conclude the instruction is an improper statement of the standard of care under these circumstances.

[¶ 14] We also disagree with the Beavises' premise that the instruction created a false supposition that Hazlett was trained as a nurse, placing her in a "non-achieved category of competency," or that it created a presumption of due care. The Beavises rely on *Gilpatrick Constr. Co. v. Wind River Ready–Mix Concrete Co.,* 473 P.2d 586, 589 (Wyo.1970), a case where a road contractor argued that placement of barricades around a construction site satisfied its duty. The *Gilpatrick* court rejected that argument because "the law of negligence is predicated upon that which is required of a reasonable person in light of all the circumstances present." *Id.* Therefore, whether the barricades "were adequate was a question for the determination of the trial court." *Id.* However, the Beavises cannot stretch *Gilpatrick* to fit their case. First, nothing in the instruction

---

1. Wyo.Stat.Ann. § 1–12–601, Injury by health care providers; burden of proof, provides:

(a) In an action for injury alleging negligence by a health care provider the plaintiff shall have the burden of proving:
   (i) If the defendant is certified by a national certificating board or association, that the defendant failed to act in accordance with the standard of care adhered to by that national board or association; or

   (ii) If the defendant is not so certified, that the defendant failed to act in accordance with the standard of care adhered to by health care providers in good standing performing similar health care services.
(b) In either paragraph (a)(i) or (ii) of this section, variations in theory of medical practice or localized circumstances regarding availability of equipment, facilities or supplies may be shown to contravene proof offered on the applicable standard of care.

indicates Hazlett was to be considered a nurse. Instead, the instruction is clear that Hazlett would be held to the same standard of care in performing the injection as a doctor, a nurse, or any other health care professional, regardless of her training or qualifications. Moreover, nothing in the instruction indicates that qualification as a nurse creates a presumption of due care, and, in accord with *Gilpatrick*, the jury in this case was permitted to make the determination of whether Hazlett's acts were negligent. *See Wardell v. McMillan*, 844 P.2d 1052, 1064 (Wyo.1992) (physicians not entitled to due-care instruction).

[¶ 15] In light of the standard of care instruction, we turn to the question of whether the district court abused its discretion in precluding the testimony at issue. The Beavises contend Hazlett's training, qualification, and certification, or lack thereof, was clearly relevant to the question of whether the injection was properly administered, reasoning that if Hazlett was not trained or qualified to give the injection in question, it is more likely she did it improperly. However, this argument is premised on the Beavises' contention that the standard of care should be something other than that applied by the district court. As we have previously discussed, the standard of care instruction, which is the law of the case, indicates that all health care professionals would be held to the same standard in analyzing the propriety of an injection, arguably making Hazlett's qualifications and training irrelevant.

[¶ 16] Nevertheless, even assuming the evidence of Hazlett's qualifications and training was relevant, it would still have to satisfy W.R.E. 403, which states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

"The trial court's authority to exclude relevant evidence is discretionary in nature, as it is in a better position 'both to detect and to assess the dangers and considerations enumerated in the rule, and to balance these against the probative value of proffered evidence.' " *Banks v. Crowner*, 694 P.2d 101, 104 (Wyo.1985) (quoting 2 Louisell and Mueller, *Federal Evidence*, § 125, p. 10 (1978)). The district court's ruling indicates it was concerned that evidence of Hazlett's lack of qualification would implicate some of the matters listed in W.R.E. 403. Subsequently, during a lengthy discussion concerning admissibility of evidence that Hazlett had committed other errors at the Wright Clinic and her ensuing transfer, the district court offered the Beavises an opportunity for a hearing, after hours, on evidentiary matters. Although there is some question whether this opportunity for a hearing was specific to the present evidentiary issue, it is clear the opportunity existed. Later, prior to Hazlett's testimony, the district court again asked whether a hearing was needed on "collateral matters." The Beavises' counsel indicated no hearing would be held. This court has written: "Where a court gives a party seeking to admit evidence the opportunity to renew his attempt to have it admitted, the party cannot complain if he fails to take the opportunity which is offered." *Contreras By and Through Contreras v. Carbon County School Dist. No. 1*, 843 P.2d 589, 596 (Wyo. 1992). Although not directly on point, *Contreras* provides strong analogous support against the Beavises' position. We cannot find an abuse of discretion under these circumstances.

### Bifurcation

[¶ 17] As an element of their third issue, the Beavises contend the district court erred in bifurcating the negligence claim against Hazlett from the negligent hiring claim against CCMH and the negligent training/supervision claim against Dr. Horan. The decision to order separate trials is within the discretion of the district court and will not be disturbed on appeal unless an abuse of discretion is found.[2] *Carlson v. Carlson*, 836

2. W.R.C.P. 42 provides in pertinent part:
(b) *Separate Trials.*—The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-par-

P.2d 297, 305 (Wyo.1992); *State Farm Mut. Auto. Ins. Co. v. Shrader,* 882 P.2d 813, 829 (Wyo.1994); *Tremblay v. Reid,* 700 P.2d 391, 398 (Wyo.1985); *Thomas v. Roth,* 386 P.2d 926, 927 (Wyo.1963). In past cases, we have approved of district courts' decisions to conduct separate trials on distinct and independent issues. *See Matter of Adoption of RHA,* 702 P.2d 1259, 1264 (Wyo.1985) (upholding bifurcation of adoption proceedings); *Tremblay v. Reid,* 700 P.2d at 398–99 (allowing severance of a defamation action from a breach of contract action). However, we have also recognized a limitation on the district court's discretion to order bifurcation. In *Carlson v. Carlson,* 836 P.2d at 305–6, we wrote:

> A trial may be bifurcated only when the issues are clearly distinct and the bifurcation will not work a hardship against either party. Although bifurcation may result in judicial economy in some cases, it often works an injustice and does not achieve judicial economy when trials must be conducted again. . . .
>
> . . .
>
> A fair trial is often thwarted when interwoven issues are tried separately.
>
> When issues are "so interwoven" that their independent trial would cause "confusion and uncertainty, which would amount to a denial of a fair trial," they must be tried together.

(Citations omitted.)

[¶ 18] Pursuant to the district court's bifurcation decision, the question at trial was simply whether Hazlett had been negligent in administering the injection. The question of negligence in administration of the injection, when combined with the standard of care instruction which is the law of the case, presented a distinct issue for the jury, and we fail to see how this issue was so interwoven with the claims of negligent training and/or supervision against Dr. Horan or negligent hiring against CCMH that an independent trial resulted in denial of a fair trial. Instead, the district court's bifurcation decision is consistent with the purposes of Rule 42, to avoid prejudice (omitting potentially unfairly prejudicial evidence of Hazlett's qualifications and training) and "to further the general objectives of the rules and to assist in the just, speedy, and inexpensive determination of litigation." *State ex rel. Pacific Intermountain Express, Inc. v. District Court of Second Judicial Dist., Sweetwater County,* 387 P.2d 550, 552 (Wyo.1963). We find no abuse of discretion in bifurcating the question of Hazlett's negligence from the direct claims against Dr. Horan and CCMH. *See Christiansen v. Silfies,* 446 Pa.Super. 464, 667 A.2d 396, 399 (1995) (claim of negligence against driver bifurcated from negligent entrustment claim against driver's employer and owner of vehicle.)

### Direct Claims Against CCMH and Dr. Horan

[¶ 19] Also in their third issue, the Beavises attack the district court's entry of judgment on the claims against CCMH and Dr. Horan. We begin with the claim against CCMH. As a legal matter, the Beavises' negligent hiring theory against CCMH rests upon the predicate of Hazlett's alleged negligence. *See Cranston v. Weston County Weed and Pest Bd.,* 826 P.2d 251, 258 (Wyo. 1992) (accepting definition of this cause of action set forth in Restatement Second of Agency § 213 (1958)). Indeed, "[o]ne element of negligent hiring is some form of misconduct by the employee that caused damages to the plaintiff." *McHaffie By and Through McHaffie v. Bunch,* 891 S.W.2d 822, 826 (Mo.1995). Thus, even assuming CCMH was negligent in the manner the Beavises claim, *i.e.,* breached some duty in hiring Hazlett, it is clear such negligence could not be the proximate cause of Pamela Beavis' injuries unless the predicate negligence of Hazlett was first found.[3] We also find *Benedict*

---

ty claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

**3.** There is some question, in negligent hiring cases, as to what level of misconduct by the employee is required to establish a claim for negligent hiring. *McHaffie,* 891 S.W.2d at 825–26. However, for purposes of this case, we will assume negligence by the employee is sufficient to invoke a negligent hiring claim.

*v. St. Luke's Hospitals,* 365 N.W.2d 499 (N.D.1985) helpful on this point. In that case, the North Dakota Supreme Court held harmless the trial court's failure to instruct on the hospital's independent duty to properly staff its facility. The court explained:

> Because the jury found that neither Dr. Ellison, the doctor on duty in the emergency room, nor Dr. Ehlen, Phillip's personal physician with whom Dr. Ellison conferred, acted negligently, the jury could not have found that a breach of duty by St. Luke's to provide competent staff in its emergency room was a proximate cause of Phillip's injuries.

365 N.W.2d at 504–5. This result also finds support in *DeWald v. State,* 719 P.2d 643, 652 (Wyo.1986), where this court wrote:

> Having held the patrolmen not liable, we must also hold that the appellee, State of Wyoming, cannot be held liable, the reason being that if the conduct of the patrolmen did not amount to negligence that caused the accident, then neither could their training by the State nor could rules have been a cause of the accident. Stated another way, it would have had to appear that, because of inadequate training or failure to follow departmental rules, the officers acted in a negligent manner and caused this accident. We have held that did not occur.

[¶ 20] Turning to the claims against Dr. Horan, the Beavises are correct in stating that the question of whether Dr. Horan breached a duty in his training/supervision of Hazlett has never been litigated. The Beavises, therefore, argue their claim against Dr. Horan has never been determined and that Dr. Horan should not enjoy the benefits of the no negligence finding in Hazlett's favor. However, as with the claim of negligent hiring against CCMH, the Beavises' claims against Dr. Horan rest on the predicate of Hazlett's alleged negligence. Indeed, no allegation was made that Dr. Horan should not have prescribed any medicine, that he prescribed the wrong medicine, that he ordered an improper dosage, that he ordered it injected into an improper location, or anything of the sort. Instead, the only allegation is that he failed to train or supervise Hazlett in administering the injection. Thus, even assuming

Dr. Horan was negligent in the manner the Beavises claim, *i.e.,* breached some duty in failing to supervise or train Hazlett, it is clear his negligence could not be the proximate cause of Pamela Beavis' injuries unless the predicate negligence of Hazlett was found. *Benedict v. St. Luke's Hospitals,* 365 N.W.2d at 504–5. We therefore conclude the district court did not err in entering judgment in favor of Dr. Horan.

[¶ 21] As for the Beavises' claim that they have been denied an opportunity for a hearing on these claims, their argument is not well taken. After trial, in addition to filing a motion for new trial, the Beavises filed an objection to the form of the judgment in which they argued the claims against Dr. Horan and CCMH had not been litigated. After holding a hearing, which apparently went unreported, the motion for new trial was denied, and the objection to the form of the judgment was overruled. Under these circumstances, we do not find a denial of due process. The issue was apparently considered and the objection overruled. Nevertheless, any error would be harmless given the preceding discussion.

[¶ 22] Although the parties spend little time discussing comparative fault, we believe this case must be analyzed consistently with the Wyoming Comparative Fault Statute, Wyo. Stat. Ann. § 1–1–109 (Lexis 1999), in order to uphold the legislative mandate on comparative fault. We therefore must address the Beavises' contention, which is captured in a pretrial memorandum:

> It is possible for the jury in this case to determine that even though Defendant Hazlett performed the injective process in the wrong way, that considering her lack of qualifications that she was not negligent, but that Defendant Horan and Defendant CCMH were negligent and consequently liable in failure of hiring, training, qualifications, retention, and supervision. . . .

This argument does have some logical appeal, and we agree that, had the Beavises established that Hazlett performed the injective process in the wrong way or was "in any measure negligent," Wyo. Stat. Ann. § 1–1–109(a)(iv), they would have later been entitled to establish their claims against CCMH

and Dr. Horan and been entitled to a jury determination on comparative fault. However, because the claims against CCMH and Dr. Horan rest on the predicate of Hazlett's alleged negligence, we find no error in entry of judgment on the claims against those two parties.

### Standard of Care Testimony

[¶ 23] The Beavises argue the district court erred in limiting standard of care testimony from witnesses Sylvia Beavis and Baerbel Merrill. The appellees counter that the district court appropriately limited Sylvia Beavis' testimony to that contained in her deposition and this limitation was consistent with the supplemental expert witness designation. After a review of the record, we conclude the district court did not abuse its discretion in limiting the standard of care testimony.

[¶ 24] We first dispose of this issue with respect to Baerbel Merrill. Merrill, the vice president of patient services at CCMH and a registered nurse, met with the Beavises in November or December of 1995 to view the injection site. When Merrill was called as a witness in the Beavises' case in chief, an attempt was made to elicit testimony regarding the standard for determining the injection site for an injection into the buttocks. Defense counsel objected, arguing that Merrill had not been designated as an expert witness. The district court ruled that, while Merrill could testify about what she saw and what she did, she could not offer standard of care testimony if she had not been designated as an expert. The Beavises point us to no expert designation in the record, and our review of the record reveals no witness designation indicating Merrill would testify as an expert witness. In addition, the record on appeal suggests the parties entered into a stipulation regarding designation of expert witnesses. However, this stipulation is not included in the record, and we thus do not know the terms of the parties' agreement with respect to designation of expert witnesses. We are, therefore, left without a record to review; and we must conclude the district court did not abuse its discretion in respect to this ruling.

[¶ 25] In regard to Sylvia Beavis' testimony, a careful review of the procedural history and circumstances of this case is necessary. Mrs. Beavis, who was not originally designated as an expert witness, was deposed on January 6, 1998. During that deposition, Mrs. Beavis testified (1) that she was shocked at the injection site because the injection was too low, (2) the injection was improper because it was too low and superficial, (3) that, because of improper placement of the injection, it caused the drug to go superficially into the muscle and cause damage. Near the end of the deposition, defense counsel for Hazlett and CCMH asked Mrs. Beavis whether she intended to testify as an expert witness. Mrs. Beavis responded that she was not aware at that time that she would testify as an expert. Less than a week after the deposition, and apparently within the time allotted to make an expert witness designation, a supplemental expert witness designation was filed announcing that Mrs. Beavis would render expert opinions regarding the proper technique for administration of intramuscular shots, including her observations of the injection given by Deb Hazlett. The witness designation further provided:

> The scope and extent of the opinion will be generally similar to the text of answers provided during [Sylvia Beavis'] examination at the deposition session on Tuesday, January 6, 1998.

No further deposition testimony was taken from Mrs. Beavis.

[¶ 26] Prior to trial, a colloquy was had concerning the extent of Mrs. Beavis' testimony. Defense counsel argued Mrs. Beavis should not be allowed to offer an expert opinion because she had not provided such testimony in her deposition. After a review of the expert witness designation, the district court ruled that Beavis' expert testimony, in accord with the witness designation, would be limited to what she said in the deposition and that she could not offer any new opinions.

[¶ 27] At trial, Mrs. Beavis testified extensively about her experience as a nurse, about how to properly administer an injection, and that the shot was given improperly.

On the fourth day of trial, the plaintiffs sought to recall Mrs. Beavis to testify further regarding the standard of care. Specifically, the plaintiffs sought to elicit testimony that Hazlett breached the standard of care by failing to follow Dr. Horan's order to inject the Kenalog into the gluteus medius as opposed to the gluteus maximus muscle. The defendants objected, arguing that such testimony was outside the scope of Mrs. Beavis' deposition. The district court reiterated its original ruling that Mrs. Beavis was limited, because of the expert witness designation, to what she said in her deposition. The plaintiffs eventually recalled Mrs. Beavis and made an offer of proof in which she testified the injection fell below the standard of care because it was not placed per doctor's orders in the correct spot of the muscle.

[¶ 28] To support their contention that the district court erred in refusing this testimony, the Beavises rely on the case of *Winterholler v. Zolessi,* 989 P.2d 621 (Wyo.1999), a recent medical malpractice jury trial that resulted in reversal on appeal. However, *Winterholler* did not turn on the issue presented here. The issues · in *Winterholler* were (1) whether the district court erred in refusing expert testimony based on unfair surprise and (2) whether the district court abused its discretion in limiting the plaintiff to one standard of care witness. *Id.* at 625, 628–29. Unlike *Winterholler,* the issue here is whether the district court erred in determining that the testimony offered at trial was outside the scope of the expert designation provided for Mrs. Beavis. We review that determination for an abuse of discretion. *Thunder Hawk By and Through Jensen v. Union Pacific R. Co.,* 891 P.2d 773, 779 (Wyo.1995); *Oukrop v. Wasserburger,* 755 P.2d 233, 237–38 (Wyo.1988).

[¶ 29] We find the case of *Thunder Hawk By and Through Jensen v. Union Pacific R. Co.,* 891 P.2d at 779 controlling on this issue. There, the district court refused to allow the plaintiffs' expert, Dr. Radecki, to testify on a matter that was beyond the scope of his expert witness designation. *Id.* The specific issue was whether Dr. Radecki would be permitted to testify about how Alex Thunder Hawk's learning disability affected his ability to understand warnings. The expert witness designation indicated Dr. Radecki would testify about Alex Thunder Hawk's continuing problems with his prothesis and his future medical expenses. There, as in this case, the plaintiffs indicated pretrial that Dr. Radecki would testify in accordance with his deposition. *Id.* Upon reviewing Dr. Radecki's deposition, this court could find no instance where Dr. Radecki was specifically asked about his opinion on how Alex Thunder Hawk's learning disability affected his ability to understand warnings and thus concluded the district court did not abuse its discretion in refusing such testimony. *Id.*

[¶ 30] We have carefully reviewed Sylvia Beavis' deposition. While there is deposition testimony from Mrs. Beavis stating the injection was misplaced, she did not testify that failure to follow a doctor's order amounts to a breach of the standard of care. Because Mrs. Beavis' expert witness designation clearly indicates that her testimony would be limited to what she said in her deposition, we conclude the district court did not abuse its discretion in refusing standard of care testimony that was beyond the scope of the expert witness designation.

### CONCLUSION

[¶ 31] The Beavises are understandably disappointed with the jury's verdict. However, we find no legal error in the proceedings and therefore affirm.