# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 96

**APRIL TERM, A.D. 2020**

_July 27, 2020_

ELAINE JOYCE LOEFFEL,

**Appellant**
**(Plaintiff),**

**v.**

**ERIC M. DASH, M.D., personally, individually and vicariously for any person or entities for whom he may be legally responsible; and BOARD OF TRUSTEES OF THE MEMORIAL HOSPITAL OF CARBON COUNTY, a body corporate and their employees, agents, and/or ostensible agents,**

**Appellees**
**(Defendants).**

S-19-0244

_Appeal from the District Court of Carbon County_
_The Honorable Dawnessa A. Snyder, Judge_

_Representing Appellant:_
> Earl Landers Vickery of Vickery & Shepherd, LLP, Houston, Texas; Frederick J. Harrison of Frederick J. Harrison, P.C., Cheyenne, Wyoming

_Representing Appellee Memorial Hospital of Carbon County:_
> Scott E. Ortiz and David E. Shields of Williams, Porter, Day & Neville, P.C., Casper, Wyoming

_Representing Appellee Eric M. Dash, M.D._:
> No appearance

_Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ._

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Chief Justice.**

[¶1]    Elaine Loeffel filed a complaint alleging negligence against Eric M. Dash, M.D. and negligent credentialing and vicarious liability against the Board of Trustees of the Memorial Hospital of Carbon County ("the Hospital").  Dr. Dash failed to answer or otherwise defend, and the district court entered a default judgment against him.  A two-phase jury trial was then scheduled on the negligent credentialing claim against the Hospital.  The first phase tried the question of Dr. Dash's negligence, and the jury returned a verdict finding no negligence. The district court found that the negligence of Dr. Dash was a prerequisite to liability against the Hospital for negligent credentialing and entered judgment in its favor.  On appeal, Ms. Loeffel claims that the default judgment against Dr. Dash estopped the Hospital from contesting his negligence, and that the credentialing claim should not have been bifurcated.  We affirm.

## ISSUES

[¶2]    Ms. Loeffel presents two issues on appeal, which we restate as:

> 1.    Did the district court err when it found the default judgment against Dr. Dash was not binding on Memorial Hospital of Carbon County on the basis of collateral estoppel or issue preclusion?
>
> 2.    Did the district court abuse its discretion when it granted Memorial Hospital of Carbon County's request to bifurcate the issue of Dr. Dash's negligence from the negligent credentialing claim against Memorial Hospital of Carbon County?

## FACTS

[¶3]    In the fall of 2013, Elaine Loeffel saw Kenneth Schulze, M.D., an orthopedic surgeon at the Hospital, regarding complaints with the big toe on her right foot.  Per Dr. Schulze's order, radiographs of her right foot/toe were taken on October 23, 2013 and reviewed by radiologist David Hansen, M.D.  Based on the x-rays, Dr. Schulze advised Ms. Loeffel that correction would likely involve a first metatarsal osteotomy and that she would have to be non-weight bearing for a period of time.  She responded that she would not be able to stay off her foot, and Dr. Schulze referred her to Eric M. Dash, a podiatrist, for possible conservative care.[1]

---

[1] The Hospital granted surgical privileges to Dr. Dash as an independent contractor for the period of January 15, 2013 to January 14, 2014.  Although the complaint and the Affidavit of Eric M. Dash indicate that Dr. Dash was an M.D., based on his State of Wyoming Board of Registration in Podiatry it appears that he is in fact a D.P.M. or Doctor of Podiatric Medicine.

1

[¶4]  During Ms. Loeffel's initial visit with Dr. Dash, he recommended an Austin-Aiken bunionectomy surgery and used a diagram to demonstrate how the procedure would help her.  She agreed to the outpatient surgery, and on December 10, 2013, she reported to the Hospital for the bunionectomy.  Dr. Dash began the procedure at approximately noon, and Ms. Loeffel was discharged that same afternoon.

[¶5]  Approximately one week after the surgery, Ms. Loeffel had a post-operative appointment with Dr. Dash.  Ms. Loeffel was scheduled to have two follow-up appointments with him, but Dr. Dash failed to attend the second scheduled appointment.  Ms. Loeffel did not receive any further care from Dr. Dash.

[¶6]  Following the surgery, Ms. Loeffel complained of even greater pain than before the surgery.  She further complained that her right toe was now "in a fixed cock-up deformity with the great toe at 20-30°" extension.  On February 9, 2016, she filed suit against Dr. Dash and the Hospital.  She alleged that Dr. Dash was negligent in selecting the surgery to be performed and in performing that surgery.  She also alleged that the Hospital was vicariously liable for Dr. Dash's negligence, and that it had negligently credentialed Dr. Dash to perform the surgery.

[¶7]  On March 15, 2016, the Hospital answered the Complaint, setting forth affirmative defenses and demanding a jury trial.  On April 1, 2016, Dr. Dash was personally served with the Complaint at his home in Las Vegas, Nevada, but seven months after service, he had not answered, and Ms. Loeffel filed a *Motion for Entry of Default Against Defendant Dash for Failure to Answer Complaint and for Evidentiary Hearing to Determine Damages*.  On December 7, 2016, the district court granted Ms. Loeffel's motion and entered default against Dr. Dash.  On April 5, 2017, Ms. Loeffel requested that the clerk of court also enter a default against Dr. Dash pursuant to W.R.C.P. 55(a), and the clerk did so.[2]  On that same date, the district court held a default judgment hearing on damages pursuant to W.R.C.P. 55(b)(2).

[¶8]  On April 25, 2017, the court entered a *Default Judgment Against Eric M. Dash, M.D.*, finding that "Ms. Loeffel's claims and allegations against Dr. Dash are deemed to be admitted, and Dr. Dash is liable for the injuries she has suffered from the surgery."

[¶9]  At the evidentiary hearing, the Hospital appeared by telephone and asserted that its alleged negligence and vicarious liability were not at issue in the proceeding, and the

---

[2] It is not clear from the record why Ms. Loeffel requested the clerk enter a subsequent entry of default almost four months after the district court found "[t]o date Defendant Eric M. Dash, M.D. has not responded to Plaintiff's Complaint and [the court] enters an order of default against Eric M. Dash, M.D. for his failure to respond to Plaintiff's Complaint."  It appears that since Ms. Loeffel requested an evidentiary hearing on damages with her request for entry of default that the district court entered default against Dr. Dash instead of the clerk of court initially.  For a discussion about what the rules require procedurally, see the discussion *infra* paragraphs 24-25.

district court agreed. Based on the testimony of Dr. Richard Southwell, an orthopedic surgeon and podiatrist, and that of Ms. Loeffel, the district court awarded damages for: (1) past and future medical expenses; (2) past and future pain, suffering and mental anguish; and (3) past and future loss of enjoyment of life. The court awarded Ms. Loeffel damages against Dr. Dash in the amount of $1,185,800.00.

[¶10] For more than a year, the remaining parties moved towards trial, completing discovery, filing dispositive motions, and designating expert witnesses. The claims against the Hospital were scheduled for a jury trial to begin on March 4, 2019. On July 31, 2018, the Hospital filed a motion for summary judgment on both the vicarious liability and negligent credentialing claims. The district court dismissed the vicarious liability claim based on Ms. Loeffel's concession that the claim was precluded by the Wyoming Governmental Claims Act.[3] The court denied summary judgment on the negligent credentialing claim, finding that issues of fact remained for jury trial.

[¶11] The Hospital also filed *Defendant Memorial Hospital of Carbon County's Motion for Judgment on the Pleadings and/or Motion to Dismiss*, by which it sought to dismiss the claims against it on the basis that the default judgment against Dr. Dash allotted one hundred percent of the fault to Dr. Dash. The court observed that the Hospital "argue[d] that the default judgment now applies to [the Hospital], while in earlier pleadings [the Hospital] sought to prevent the use of the default judgment to determine negligence or damages," and it denied the motion.

> Since, the default judgment against Dr. Dash is not binding on [the Hospital] with regards to negligence or damages, and the claim for negligent credentialing is wholly independent, the Court finds that [the Hospital's] potential negligence or comparative fault [sic] has yet to be determined. Therefore, there are still issues outstanding for which relief can be granted.

[¶12] On August 21, 2018, Ms. Loeffel filed *Plaintiff's Motion in Limine RE: Collateral/Res Judicata Attacks on This Court's Judgment*. In her motion, she argued that Dr. Dash's malpractice was previously determined in the default judgment, and that it was not subject to collateral attack by the Hospital. The district court denied the motion and held:

> As discussed above in . . . the motion to dismiss, [the Hospital] is entitled to the defense that Dr. Dash was not negligent in performing surgery on Plaintiff. [The Hospital] is not

---

[3] *See Campbell Cty. Mem. Hosp. v. Pfeifle*, 2014 WY 3, ¶ 29, 317 P.3d 573, 580-81 (Wyo. 2014) (Governmental Claims Act does not allow a theory of ostensible agency against a governmental hospital).

precluded from asserting Dr. Dash was not negligent and as such [the Hospital] was not negligent in credentialing Dr. Dash simply by the entry of default judgment against Dr. Dash.

[¶13]  Before trial, the Hospital filed *Defendant Memorial Hospital of Carbon County's Rule 42(b) Motion for Separate Trials* pursuant to W.R.C.P. 42(b), requesting that the district court bifurcate the trial into two phases.  The Hospital argued that the negligent credentialing claim was predicated on a determination of Dr. Dash's negligence.  Accordingly, it requested a two-phase trial in which the jury would first determine whether Dr. Dash performed the procedure on Ms. Loeffel negligently, followed by a trial to determine whether the Hospital negligently credentialed Dr. Dash.  The district court noted that at oral argument Ms. Loeffel did not object so long as the same jury heard both phases, and it granted the motion.  The court ordered the trial to proceed, with the first phase to determine whether Dr. Dash was negligent in performing the surgery, and the second to determine whether the Hospital acted negligently in credentialing Dr. Dash and the amount of its fault.

[¶14]  On February 28, 2019, Ms. Loeffel filed *Plaintiff's Motion to Reconsider Bifurcation*.  She argued that bifurcation "would work a substantial hardship" on her and would not result in judicial economy.  The district court orally denied the motion on March 4, 2019.

[¶15]  From March 4 to 6, 2019, a jury trial was held to determine whether Dr. Dash was negligent.  The jury returned a verdict finding no negligence and therefore awarded no damages.  Accordingly, the district court entered a *Judgment on Jury Verdict* in favor of the Hospital because a finding of negligence by Dr. Dash was a prerequisite to the Hospital's liability for negligent credentialing.  The second phase of the trial was thus not conducted.

[¶16]  During the jury trial, Ms. Loeffel filed two motions pursuant to W.R.C.P. 50.  First, on March 6, 2019, she requested that the district court grant judgment as a matter of law with respect to the first phase of the jury trial as "the issues [were] already determined by the Court in its default judgment, after the April 5, 2017 evidentiary hearing" because the court had already entered a default judgment that Dr. Dash was negligent.  She argued that no issues remained to submit to the jury in phase one.  On May 31, 2019, she renewed her motion for judgment as a matter of law pursuant to W.R.C.P. 50(b) and W.R.C.P. 59.  She argued that based upon the law of the case doctrine, collateral estoppel, and/or res judicata, there should not have been a phase one trial based on the earlier default judgment against Dr. Dash.

[¶17]  The district court found that W.R.C.P. 50 "is a sufficiency of the evidence provision allowing the [district court] to enter judgment when the evidence submitted to the jury is

4

insufficient to render a legal argument."[4]  Accordingly, it denied *Plaintiff's Motion for Judgment as a Matter of Law*.  Ms. Loeffel timely appealed to this Court.

## DISCUSSION

[¶18]  We will first address Ms. Loeffel's argument that the Hospital was collaterally estopped from refuting Dr. Dash's negligence in performing the underlying surgery based upon the default judgment entered against Dr. Dash.  We will then turn to Ms. Loeffel's arguments concerning the district court's decision to grant the Hospital's motion for separate trials that bifurcated the issue of Dr. Dash's negligence from that of negligent credentialing by the Hospital.

## A.      Collateral Estoppel or Issue Preclusion

[¶19]  Ms. Loeffel asserts that the doctrine of collateral estoppel barred the Hospital from litigating Dr. Dash's negligence in performing the underlying surgery because the default judgment determined that he was negligent.  The application of collateral estoppel and res judicata presents questions of law that we review de novo. *Bird v. Lampert*, 2019 WY 56, ¶¶ 9-10, 441 P.3d 850, 854 (Wyo. 2019); *Doles v. State*, 2007 WY 119, ¶ 4, 163 P.3d 819, 820 (Wyo. 2007).

[¶20]  Ms. Loeffel uses the doctrines collateral estoppel and res judicata interchangeably, but collateral estoppel or issue preclusion is the appropriate doctrine for her argument. "While the two doctrines serve similar purposes, they are used in different circumstances." *Tozzi v. Moffett*, 2018 WY 133, ¶ 16, 430 P.3d 754, 760 (Wyo. 2018).  Res judicata or claim preclusion bars relitigating claims or causes of action and collateral estoppel bars relitigating issues. *Casiano v. State ex rel. Wyoming Dep't of Transportation*, 2019 WY 16, ¶ 10, 434 P.3d 116, 120 (Wyo. 2019).  "Collateral estoppel precludes a party from raising issues that have been contested and resolved in a prior proceeding." *Bird*, ¶ 10, 441 P.3d at 854.  To determine whether collateral estoppel bars an issue raised in a subsequent proceeding, we consider the following elements:

> (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

---

[4] We interpret this to mean that the district court did not consider a Rule 50 motion an appropriate means to challenge a legal decision it had previously made.

5

*Tozzi*, ¶ 17, 430 P.3d at 760.

[¶21]   The parties do not dispute that to recover against the Hospital on her negligent credentialing claim, Ms. Loeffel had to establish that Dr. Dash was negligent in performing the surgery. *See generally Bogdanski v. Budzik*, 2018 WY 7, ¶ 22, 408 P.3d 1156, 1162 (Wyo. 2018) ("We have previously held that a party can only recover for a negligent failure to train or supervise if the person alleged to have been improperly trained or supervised was negligent."); *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 545-46 (Tex. 2004) ("If the physician is not negligent, there is no negligent credentialing claim against the hospital." (quoting *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex. App. 2002))). Undeniably, without negligent treatment by the doctor, a negligent credentialing claim against the hospital could not exist. *Lopez v. United States*, 823 F.3d 970, 976-77 (10th Cir. 2016) ("[A] negligent credentialing and privileging claim under Colorado law requires proof that the plaintiff was injured by the negligent acts of the improperly credentialed and privileged physician."); *Schelling v. Humphrey*, 916 N.E.2d 1029, 1033-34 (Ohio 2009) ("Although medical malpractice claims against the doctor and negligent credentialing claims against the hospital are separate causes of action, . . . both causes of action fail without proof that the physician's failure to abide by ordinary standards of care proximately caused the patient's harm."). It is this element of proximate causation stemming from Dr. Dash's negligence that Ms. Loeffel argues was established by the default judgment.

[¶22]   The doctrine of collateral estoppel bars litigation by parties or their privies only to issues that have been previously litigated. *Tozzi*, ¶ 25, 430 P.3d at 762. If the issue in dispute has not been fully litigated, the doctrine is inapplicable. *Casiano*, ¶ 21, 434 P.3d at 122; *Wilkinson v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 991 P.2d 1228, 1234 (Wyo. 1999) ("A full and fair opportunity to litigate an issue is all that is required for the collateral estoppel doctrine to apply."). The question is whether entry of a default judgment is full litigation of an issue, and in particular in this case, whether the entry of default was a full litigation of Dr. Dash's negligence.

[¶23]   Ms. Loeffel argues that it was, and that the default judgment should be given collateral estoppel effect, suggesting that the district court's hearing on the default judgment and actual default judgment amounted to an adjudication on the merits. She contends that the district court's findings in its default judgment established the truth of the pleaded facts in the complaint. Further, she argues that the default judgment hearing under W.R.C.P. 55(b)(2) gave the Hospital a full and fair opportunity to litigate Dr. Dash's negligence.

[¶24]   Ms. Loeffel's argument finds no support in the legal definition or practical effect of a default judgment. A default judgment is not a trial on the merits. *Rosty v. Skaj*, 2012 WY 28, ¶ 29, 272 P.3d 947, 957 (Wyo. 2012) ("[T]his court has long recognized that 'default judgments are not favored in the law' and 'it is preferable that cases be tried on

their merits.'" (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 997 (Wyo. 1993))); *see also Largent v. Largent*, 2008 WY 106, ¶ 14, 192 P.3d 130, 135 (Wyo. 2008) (setting aside a default judgment did not compromise or prejudice the plaintiff's ability to litigate case on the merits). In a civil case, W.R.C.P. 55 provides a procedure to enter judgment against a party without consideration of the merits when there is a competent showing that the offending party failed to plead or defend the case. *In re HLL*, 2016 WY 43, ¶ 25, 372 P.3d 185, 190 (Wyo. 2016). There are two steps involved in defaulting a party who has failed to plead or otherwise defend: (1) entry of a default by the clerk pursuant to W.R.C.P. 55(a); and (2) obtaining a judgment by default pursuant to W.R.C.P. 55(b). *Id.* ¶¶ 25-26, 372 P.3d at 190-91. An entry of default and default judgment each have separate implications on the defaulting party.

> Entry of default is a clerical act performed by the clerk of court and is not a judgment. The entry of default forecloses the defaulting party from making any further defense or assertion with respect to liability or any asserted claim. Although the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief.

*RDG Oil & Gas, LLC v. Jayne Morton Living Tr.*, 2014 WY 102, ¶ 12, 331 P.3d 1199, 1201-02 (Wyo. 2014) (citations omitted) (internal quotation marks omitted).

[¶25] "With respect to the second step in obtaining a judgment by default, W.R.C.P. 55(b)(1) and (2) provide the procedure." *In re HLL*, ¶ 26, 372 P.3d at 190-91. The default judgment establishes the liability solely for the unresponsive party and defines the amount of liability or nature of the relief against that party. *Bolding v. Kindel Concrete, LLC*, 2014 WY 132, ¶ 19, 336 P.3d 144, 149-50 (Wyo. 2014).

[¶26] A default judgment has a limited effect because a complaint often contains different causes of action with varying parties alleged to be liable under multiple theories. As the United States Supreme Court has held, "[a] judgment by default only admits for the purpose of the action the legality of the demand or claim in suit: it does not make the allegations of the declaration or complaint evidence in an action upon a different claim." *Cromwell v. Sac Cty.*, 94 U.S. 351, 356-57, 24 L.Ed 195 (1876). Other courts have held likewise. *See Leavitt v. Siems*, 330 P.3d 1, 10 (Nev. 2014) (finding a default judgment entered against an employee physician of eye clinic could not be used to impose vicarious liability on eye clinic as an answering employer codefendant who was contesting liability with regard to patient's medical malpractice action); *W. Heritage Ins. Co. v. Superior Court*, 132 Cal.Rptr.3d 209, 221 (Cal. Ct. App. 2011) ("It is an established principle of law that admissions implied from the default of one defendant ordinarily are not binding upon a codefendant who, by answering, expressly denies and places in issue the truth of the allegations thus admitted by the absent party." (internal quotation marks omitted));

*Morehouse v. Wanzo*, 72 Cal.Rptr. 607, 611 (Cal. Ct. App. 1968) ("The general contractor, as an employer liable under the doctrine of respondeat superior, may take advantage of any favorable aspects of the judgment against the employee, but he is not bound by the issues resolved against the employee by the latter's default."); *Dade Cty. v. Lambert*, 334 So.2d 844, 847 (Fla. Dist. Ct. App. 1976) (finding that county could not be held vicariously liable based on its employee's failure to plead, and stating "[t]he default of one defendant, although an admission by him of the allegations of the complaint, does not operate as an admission of such allegation as against a contesting co-defendant"); *United Salt Corp. v. McKee*, 628 P.2d 310, 313 (N.M. 1981) (holding that an employer is not foreclosed from litigating issues of negligence, respondeat superior, and damages based on an employee's default); *Balanta v. Stanlaine Taxi Corp.*, 763 N.Y.S.2d 840, 842 (N.Y. App. Div. 2003) (stating that "[t]he granting of a default judgment against [the employee] does not preclude [the employer] from contesting the issue of [the employee's] negligence"); *see also* 49 C.J.S. *Judgments* § 258 (June 2020 update) ("The default of one defendant, although an admission by it of the allegations in the complaint, does not operate as an admission of such allegations as against a contesting codefendant even though the defendants may be inextricably joined."); 49 C.J.S. *Judgments* § 273 ("A default by one defendant is not binding upon a codefendant as an admission of liability.").

[¶27] This result finds further support in the purpose of a default judgment. Default judgments are punitive sanctions against an unresponsive party that serve as a protection to a diligent party. *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 22, 45 P.3d 647, 654-55 (Wyo. 2002); 46 Am. Jur. 2d *Judgments* § 243 (May 2020 update) ("Default is an appropriate sanction when a defendant fails to appear, answer, plead or otherwise defend.").

[¶28] Under these circumstances, following entry of default against Dr. Dash, the district court was required to hold a default hearing on damages, and the burden of proof was on Ms. Loeffel to establish that the damages she claimed were caused by Dr. Dash's negligence. *See Multiple Resort Ownership Plan*, ¶ 24, 45 P.3d at 655 ("The burden, however, is upon those seeking more than mere nominal damages to prove their damages."). We disagree with Ms. Loeffel, however, that the default hearing was "actual litigation" on the merits and gave the Hospital "a full and fair opportunity to litigate" Dr. Dash's negligence in performing the surgery. The failure of Dr. Dash to plead or otherwise respond and resulting default did not deprive the Hospital of its right to have a jury decide the negligent credentialing claim.[5] It would have been error for the district court to enter

---

[5] W.R.C.P. 38(a) provides:

> Issues of law must be tried by the court, unless referred as hereinafter provided; and issues of fact arising in actions for the recovery of money only, or specific real or personal property, must be tried by a jury unless a jury trial be waived, or a reference be ordered. All other issues of fact shall

judgment as a matter of law against the Hospital based on Dr. Dash's default. *See generally Browning v. Burt*, 613 N.E.2d 993, 1004 (Ohio 1993) ("While the acts or omissions of a hospital in granting and/or continuing staff privileges to an incompetent physician *may* ultimately lead to an act of medical malpractice by the incompetent physician, the physician's ultimate act of medical malpractice is factually and legally severable and distinct from the hospital's acts or omissions in negligently credentialing him or her with staff membership or professional privileges.").

[¶29]  To find otherwise would also have put the Hospital in the position of defending the alleged negligence of Dr. Dash at the default judgment hearing before it had had an opportunity to conduct discovery.  We therefore find no error in the district court's refusal to find that the default judgment against Dr. Dash established his negligence for purposes of the negligent credentialing claim against the Hospital.

## B.    <u>Bifurcation</u>

[¶30]  As to her second issue, Ms. Loeffel contends that the district court erred in bifurcating the issue of Dr. Dash's negligent treatment of Ms. Loeffel from the Hospital's acts or omissions in credentialing Dr. Dash.  W.R.C.P. 42(b) provides as follows:

> (b) *Separate trials*. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any right to a jury trial.

The decision to order separate trials is within the discretion of the district court, and we will "reverse only if the district court's decision was outside the bounds of reason under the circumstances." *Ransom v. Ransom*, 2017 WY 132, ¶ 10, 404 P.3d 1187, 1190 (Wyo. 2017) (quoting *In re Kite Ranch, LLC*, 2010 WY 83, ¶ 33, 234 P.3d 351, 363 (Wyo. 2010)); *see also Beavis ex rel. Beavis v. Campbell Cty. Mem'l Hosp.*, 2001 WY 32, ¶ 17, 20 P.3d 508, 514 (Wyo. 2001) ("The decision to order separate trials is within the discretion of the district court and will not be disturbed on appeal unless an abuse of discretion is found.").

[¶31]  As discussed above, in an action against a hospital for negligent credentialing, the doctor's medical malpractice must have proximately caused Ms. Loeffel's alleged injury. *Schelling*, 916 N.E.2d at 1033-34 ("Although medical malpractice claims against the

---

be tried by the court, subject to its power to order any issue to be tried by a jury, or referred.

In Wyoming, "[a] right to a jury trial, even under the federal constitution, is preserved . . . in cases triable at law." *In re Estate of Cheek*, 2002 WY 130, ¶ 9, 53 P.3d 113, 116 (Wyo. 2002).  "The law favors a trial by a jury" and that right should be "carefully guarded against infringement."  50A C.J.S. *Juries* § 4.

doctor and negligent credentialing claims against the hospital are separate causes of action, . . . both causes of action fail without proof that the physician's failure to abide by ordinary standards of care proximately caused the patient's harm."). Ms. Loeffel's negligent credentialing claim derives from Dr. Dash's alleged negligent treatment. If Dr. Dash was not negligent in his treatment of Ms. Loeffel, she could not recover against the Hospital for negligent credentialing. *Bogdanski*, ¶ 22, 408 P.3d at 1162 ("We have previously held that a party can only recover for a negligent failure to train or supervise if the person alleged to have been improperly trained or supervised was negligent."); *Garland Cmty. Hosp.*, 156 S.W.3d at 545-46 ("If the physician is not negligent, there is no negligent credentialing claim against the hospital." (quoting *Hiroms*, 76 S.W.3d at 489)); Restatement (Second) of Torts § 411 (1965, June 2020 update) ("The employer of a negligently selected contractor is subject to liability under the rule stated in this Section for physical harm caused by his failure to exercise reasonable care to select a competent and careful contractor, but only for such physical harm as is so caused.").

[¶32]  In *Beavis ex rel. Beavis v. Campbell County Memorial Hospital*, this Court upheld the district court's decision to bifurcate a negligence claim against an employee medical assistant administering an injection from the negligent hiring claim against the employer hospital. *Beavis*, ¶¶ 17-18, 20 P.3d at 514-15. We found that the issue of an individual negligence along with negligent hiring and training were not so intertwined that a single trial was required. *Id.* ¶ 18, 20 P.3d at 515. We held that "the district court's bifurcation decision is consistent with the purposes of Rule 42, to avoid prejudice (omitting potentially unfairly prejudicial evidence of Hazlett's qualifications and training) and 'to further the general objectives of the rules and to assist in the just, speedy, and inexpensive determination of litigation.'" *Id.* (quoting *State ex rel. Pacific Intermountain Express, Inc. v. District Court of Second Judicial Dist., Sweetwater Cty.*, 387 P.2d 550, 552 (Wyo. 1963)); *see also Bogdanski*, ¶ 25, 408 P.3d at 1163-64 (discussing bifurcating claims of vicarious liability from negligent hiring, training and retention claims is necessary to avoid prejudice because "evidence necessary to prove direct negligence claims [such as] an employee's prior convictions for traffic offenses . . . may lead a jury to draw the inadmissible inference that because the driver had been negligent on other occasions he was negligent at the time of the accident" (internal quotation marks omitted)).

[¶33]  Ms. Loeffel claims Dr. Dash should not have had credentials to perform the surgery at the Hospital in the first place because of Dr. Dash's history of financial irresponsibility. She suggests that the Hospital was negligent in credentialing him because the Wyoming Medical Center denied Dr. Dash privileges. Significantly, David Carter of the Sheridan Surgery Center also expressed concerns as to Dr. Dash's proficiency in the surgical setting, and as to the allegation that Dr. Dash returned to practice "under fiscal distress." The majority of Ms. Loeffel's negligent credentialing claim centers around Dr. Dash's bankruptcy filings from 1989 to 2016.

[¶34]   Under these circumstances, it is impossible to find that the district court abused its discretion in bifurcating the issue of Dr. Dash's negligence.  Admitting evidence relating directly to the negligent credentialing claim against the Hospital and Dr. Dash's financial condition in a single trial would have been unfairly prejudicial, and it could have led the jury to improperly conclude that Dr. Dash was negligent in conducting the surgery based perhaps solely on his financial situation.  The district court's bifurcation decision is consistent with the purposes of Rule 42, to avoid prejudice and "to assist in the just, speedy, and inexpensive determination of litigation."  *See generally Beavis*, ¶ 18, 20 P.3d at 515 (citation omitted).  It was not an abuse of discretion.

## CONCLUSION

[¶35]   The district court did not err in refusing to find that the Hospital was collaterally estopped from contesting the alleged negligence of Dr. Dash in performing the surgery on Ms. Loeffel.  The default against Dr. Dash was not binding upon the Hospital or an admission by the Hospital of Dr. Dash's negligence for purposes of the separate negligent credentialing claim.  Nor do we find an abuse of discretion in the court's decision to bifurcate the trial of Dr. Nash's negligence from the negligent credentialing claim against the Hospital.  The bifurcation ensured that unfairly prejudicial evidence relating to Dr. Dash's financial condition was not part of the first phase of the jury trial, consistent with W.R.C.P. 42(b).  Affirmed.