2002 WY 67

**MULTIPLE RESORT OWNERSHIP PLAN, INC., and Owners' Resorts & Exchange, Inc., Appellants (Defendants),**

v.

**DESIGN–BUILD–MANAGE, INC., Appellee (Plaintiff).**

No. 01–157.

Supreme Court of Wyoming.

May 2, 2002.

Deborah Ford Mincer of Murane & Bostwick, LLC, Cheyenne, WY, Representing Appellants. Argument by Ms. Mincer.

Gregory C. Dyekman of Dray, Thomson & Dyekman, P.C., Cheyenne, WY, Representing Appellee. Argument by Mr. Dyekman.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Multiple Resort Ownership Plan, Inc. (MROP) and Owners' Resorts & Exchange, Inc. (ORE) (collectively Appellants) appeal the denial of a motion to set aside an entry of default and a default judgment. We affirm the entry of default but reverse and remand the default judgment.

## ISSUES

[¶ 2] Appellants present four issues for review:

1. Whether the trial court abused its discretion by refusing to set aside the entries of default and default judgments after specifically finding that the lawyer for the Appellants had the impression that he had an extension of time in which to respond to the complaint?

2. Whether the trial court abused its discretion by refusing to set aside the entries of default and default judgments where no notice was given to the Appellants of the applications for judgments?

3. Whether the underlying judgments are void as a matter of law, because they awarded relief for unliquidated damages and foreclosure without a hearing?

4. Whether the trial court's refusal to set aside the entries of default and default judgment violated judicial policy regarding default judgments when no finality and no judicial efficiency was promoted by the denial of the motion?

Design Build Manage, Inc. (DBM) condenses the matter to a single issue:

Whether the trial court abused its discretion in denying Appellants' Motion to Set Aside the Entries of Default and Default Judgments.

## FACTS

[¶ 3] MROP and ORE are nonprofit Utah corporations. MROP owns timeshare resorts, and ORE manages the properties. ORE, as the agent of MROP, entered into a contract with Jackson, Wyoming based contractor DBM to refurbish an old motel. Pursuant to the contract, ORE was to pay DBM "a total to be determined through 'cost plus' based on original bid [with] changes to be approved." Appellants approved various changes, so the cost of the project escalated as the work progressed. When the project was completed, Appellants expected a final bill for around $15,000. Instead, DBM presented a final bill for about $300,000, which

Appellants refused to pay. As a consequence of the dispute with Appellants, DBM found itself unable to pay its materialmen and suppliers for their work. One of the materialmen on the project, Jackson Lumber, ultimately filed suit against Appellants and DBM.

[¶ 4] Between October 2000 and December 2000, Appellants canceled several meetings scheduled to discuss possible settlements. In early January 2001, DBM sent a notice of intent to file a lien. Appellants' Utah attorney, Joseph Hatch (Hatch), contacted DBM's attorney, David DeFazio (DeFazio), and suggested the parties could work out their differences. The parties finally met in Salt Lake City on January 17, 2001, but were unable to bridge the substantial gap between their positions. Consequently, DBM filed a claim for a contractor's lien against Appellants' Jackson property. Shortly thereafter, DBM filed an action against Appellants alleging breach of contract, quantum meruit/unjust enrichment, and seeking foreclosure of the lien. The Complaint sought total damages of $299,836.19.

[¶ 5] The Complaint was served upon Appellants on March 1, 2001, at their offices in Salt Lake City. Upon receipt of the Complaint, Hatch contacted DeFazio and requested an open extension of time to file an answer.[1] The parties' recollections of their conversation differ substantially. Hatch testified that when he requested the extension, DeFazio's response was, "We'll certainly work with you on this." Hatch took this to mean that his request was granted. DeFazio, on the other hand, insisted no request for an open extension of time was made. He indicated that Hatch did mention the possibility of getting an extension for some period of time in order to work on a settlement. DeFazio testified that he was not open to an extension based upon his perception that Appellants were employing stalling tactics. He stated that his comment on working with Appellants related to the possibility of settle-

ment and not to an open extension on a filing date for an answer.

[¶ 6] Over the next few weeks, DBM sent two letters to Appellants, through their attorney. On March 9, 2001, DeFazio mailed an "Acceptance of Service" to Hatch with a request that he sign and return it. Later, Hatch admitted that he simply put the letter and "Acceptance of Service" in a file and did not respond. DeFazio sent the second letter on March 21, 2001, which informed Hatch that interrogatories and a request for production of documents would be sent within the next week and requested a detailed enumeration of Appellants' objections to DBM's billing. The letter also included an offer to listen to any suggestions that Hatch might have on a potential settlement. Again, DeFazio did not receive a reply to his letter from either Hatch or Appellants.

[¶ 7] It perhaps was inevitable then that Appellants did not file an answer prior to the expiration of the thirty-day limit. On April 3, 2001, DBM filed a request to enter default pursuant to W.R.C.P. 55, which the clerk of the district court duly entered on the same day. Contemporaneously with its request for an entry of default, DBM filed an application for default judgment. In an attached affidavit by its attorney, DBM reiterated the amount of damages set forth in the complaint at $299,836.19 and also requested relief in the form of a lien foreclosure. After considering the application and the filings in the record, the district court granted default judgment in the amount of damages requested and authorized foreclosure against Appellants.

[¶ 8] Appellants moved to set aside the entry of default and default judgment. Appellants argued that Hatch's belief that he had obtained an open extension from DeFazio constituted a "mistake, inadvertence, surprise, or excusable neglect" pursuant to W.R.C.P. 60(b)(1) justifying relief from the entry of default. Appellants also contended they had made an appearance in the proceedings pursuant to W.R.C.P. 55(b)(2) and, accordingly, were entitled to three days' notice of the application for entry of default. Final-

---

1. In the Jackson Lumber case, Hatch made a similar request but was rebuffed by Jackson Lumber's counsel. In response, Appellants hired a local Jackson law firm to represent them in that case.

ly, Appellants attacked the default judgment by claiming that any monetary damages were unliquidated, necessitating a hearing, and that the lien was void for DBM's failure to comply with statutory requirements. After a hearing, the district court denied Appellants' motions. The court concluded that Appellants had failed to provide sufficient grounds for setting aside the entry of default and had not made an appearance in the case. The court also found the damages claimed to be liquidated in nature. Appellants now bring their claims before this Court.

## DISCUSSION

*Entry of Default*

[¶ 9] Entry of default is a clerical act performed by the clerk of court and is not a judgment. W.R.C.P. 55(a). The entry of default forecloses the defaulting party from making any further defense or assertion with respect to liability or any asserted claim. *Vanasse v. Ramsay*, 847 P.2d 993, 996–97 (Wyo.1993) (quoting *Spitzer v. Spitzer*, 777 P.2d 587, 592 (Wyo.1989)). "Although the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief." *Id.*

[¶ 10] The procedure for setting aside an entry of default is set forth W.R.C.P. 55(c):

For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

W.R.C.P. 60(b) sets forth the grounds constituting good cause for setting aside an entry of default:

On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4)

the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

The decision on whether good cause exists under Rule 60(b) to set aside an entry of default is consigned to the discretion of the district court. *Fluor Daniel (NPOSR), Inc. v. Seward*, 956 P.2d 1131, 1134 (Wyo.1998), *cert. denied*, 525 U.S. 983, 119 S.Ct. 507, 142 L.Ed.2d 402 (1998); *Whitney v. McDonough*, 892 P.2d 791, 794 (Wyo.1995). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Erhart v. Evans*, 2001 WY 79, ¶ 11, 30 P.3d 542, ¶ 11 (Wyo.2001) (quoting *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, ¶ 6 (Wyo.2001)); *see also, Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998).

[¶ 11] We have set out the analytical process to be applied by the district court in exercising its discretion whether to set aside an entry of default:

The court first must consider whether the filed motion articulates a reason for relief under WYO. R. CIV. P. 60, and that is a question of law to be reviewed for correctness.... When an appropriate reason is set forth, the exercise of discretion in granting or denying relief depends upon the facts of the case. In making that decision, the trial court is to consider whether the moving party established the articulated grounds for relief and demonstrated a meritorious defense. Even if these conclusions are in the affirmative, the trial court still must determine whether the plaintiff will be prejudiced and whether culpable conduct on the part of the defendant resulted in the default. Our review of this sequence of determinations by the trial court is limited to a determination of whether in resolving these questions the trial court abused its discretion. *Carlson v. Carlson*, 836 P.2d 297, 301

(Wyo.1992); *followed in Whitney,* 892 P.2d at 794; *Vanasse,* 847 P.2d at 996.

*Fluor Daniel,* 956 P.2d at 1134.

[¶ 12] Appellants argue that the district court abused its discretion when it did not find good cause for setting aside the entry of default under either Rule 60(b)(1) or (6). Appellants contend that the failure to file an answer was done on the basis of mistake, inadvertence, or excusable neglect because of Hatch's reasonable belief that he had been granted an extension. Failing a finding under Rule 60(b)(1), Appellants urge us to consider the circumstances of this case as a reason for justifying relief under the catchall provision of 60(b)(6).

■ [¶ 13] Assuming Hatch believed that he had an extension; the question is whether that belief is sufficient to constitute a mistake, inadvertence, or excusable neglect pursuant to Rule 60(b). We conclude that it is not, because Hatch's actions under the circumstances were not reasonable. An out-of-state defendant must serve an answer within thirty days after the service of the summons and complaint. W.R.C.P. 12(a). The Uniform Rules for District Courts specifically delineate the circumstances when time limits may be extended or modified:

**Rule 202. Time limits.**

Except as may be permitted by the Wyoming Rules of Civil Procedure and the Wyoming Rules of Criminal Procedure, time limits permitted or required by rules or court order may not be extended or modified by agreement of counsel, but only by order.

■ [¶ 14] In this case, Hatch assumed from his conversation with DeFazio that he had an open extension of time for filing an answer. Hatch made this assumption absent an unequivocal verbal or written confirmation from DeFazio and in the face of the explicit requirements of the Wyoming Rules of Civil Procedure and the Uniform Rules for District Courts. Ignorance of the law or rules of procedure does not justify relief from an entry of default. *Edward H. Bohlin Company, Inc. v. Banning Company, Inc.,* 6 F.3d 350, 357 (5th Cir.1993) ("Gross carelessness, ignorance of the rules, or ignorance of the

law are insufficient bases for 60(b)(1) relief."); *see also,* 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2858 at 280 (1995); 12 Moore's Federal Practice § 60.41[1][c][iii] (Matthew Bender 3rd ed.1999). Appellants have failed to direct us to any extenuating circumstances, such as fraud or inducement by DeFazio, that would justify Hatch's actions. The concept of time limitations for filing pleadings with the court is a fairly basic one of legal practice. Hatch's reliance on his belief in an open-ended extension was simply not reasonable. *See, e.g., United States v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops,* 857 F.2d 46, 49 (1st Cir.1988) (district court did not abuse discretion in not setting aside a default judgment because counsel's reliance on local attorney's advice that there was no specific date for filing answer was unreasonable).

■ [¶ 15] Appellants also raise a claim that the circumstances of this case justify relief under Rule 60(b)(6). We have described the circumstances when relief may be justified under this provision:

Considering the "catch all" clause of Rule 60(b)(6) that a judgment may be set aside for "any other reason justifying relief," we note that this means shall be utilized "only if extraordinary circumstances are present." *Bailey v. Ryan Stevedoring Co.,* 894 F.2d 157, 160 (5th Cir. 1990); *See also, Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 851 (5th Cir. 1990). In analysis of this clause, we have held that where an attorney was grossly negligent in his representation, the litigant was not necessarily entitled to relief under 60(b)(6). [*Hochhalter v. Great Western Enterprises, Inc.,* 708 P.2d 666, 669–670 (Wyo.1985).]

*Vanasse,* 847 P.2d at 998. In *Hochhalter,* the defendants' attorney represented that he was actively representing their interests. In truth, however, the attorney was lying to his clients and had failed to file an answer. We held that "[A] litigant is not necessarily entitled to relief under Rule 60(b)(6) solely because his counsel was grossly negligent. To hold otherwise would be inconsistent with holding each party 'bound by the acts of his

lawyer-agent.'" 708 P.2d at 670. Here, Appellants have failed to demonstrate any extraordinary circumstances justifying relief under Rule 60(b)(6). In *Hochhalter*, we suggested that proof that an attorney's gross negligence was the product of personal or psychological problems could constitute an extraordinary circumstance. Absent such a demonstration, a district court does not abuse its discretion in denying a request for relief under Rule 60(b)(6). 708 P.2d at 670. There certainly was no such allegation or demonstration in this case and, accordingly, we do not find an abuse of discretion in the district court's denial of relief under Rule 60(b)(6).

[¶ 16] Failing a justification for relief under Rule 60(b), Appellants argue that they were, nevertheless, entitled to notice of DBM's motion for default under W.R.C.P. 55(b)(2). That rule requires notice when a party has appeared in a proceeding:

> If the party against whom a judgment by default is sought has appeared in the action the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application.

Appellants claim that they "appeared" in this action by evidencing an intent to defend through two ways: (1) Hatch's conversation with DeFazio regarding a possible extension of time to file an answer; and (2) its appearance and participation in the related proceedings brought by Jackson Lumber.

[¶ 17] We have defined what Rule 55(b)(2) means by "appearance" in broad terms:

> On the issue of what constitutes an appearance, we have said, "An appearance in an action involves some submission or presentation to the court by which a party shows his intention to submit himself to the jurisdiction of the court." *Hochhalter*, 708 P.2d at 671 (quoting *U.S. Aviation*, 664 P.2d at 124). A party "will be deemed to have appeared * * * when contacts between the parties clearly demonstrate an intent to defend." *Hochhalter*, 708 P.2d at 672. *See also, Sanford v. Arjay Oil Co.*, 686 P.2d 566, 571 (Wyo.1984).

*Vanasse*, 847 P.2d at 1001. Accordingly, a party has appeared in an action when they have made some submittal or presentation to the court. We have also recognized what is essentially a constructive appearance when the contacts between the parties clearly evidence an intent to defend. Such an approach is consistent with the majority of jurisdictions, which have adopted a broad definition of appearance under Rule 55(b)(2). *See* 10 Moore's Federal Practice § 55.21[2][b][i] (Matthew Bender 3rd ed.1999); and 46 Am. Jur.2d *Judgments* § 300 at 614–616 (1994); *but see Zuelzke Tool & Engineering Company, Inc. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230–231 (7th Cir.1991) (specifically rejecting a broad definition of "appearance" under Rule 55(b)(2) in favor of a strict definition requiring an actual submission or presentation to the district court).

[¶ 18] There is no question here that Appellants did not make any submittal or presentation to the district court. The issue before us then is whether the contacts between Appellants and DBM clearly evidenced an intent by Appellants to defend. What constitutes a constructive appearance under Rule 55(b)(2) is dependent upon the circumstances of each case. In this case, Appellants' counsel made a single phone call to DBM's attorney requesting an extension of time. There is no other activity attributable to Appellants or their counsel in this action that could be deemed evidence of an intent to defend. To the contrary, Appellants failed to respond to the complaint in any manner. Appellants did not respond to the correspondence from DBM by either signing and returning the acceptance of service or providing an enumeration of their objections to the billing. We hold that a party does not appear in a case when it does no more than make a telephone call requesting an extension of time to file an answer. Simply making a phone call requesting an extension of the answer time without taking any other action is more indicative of a desire to delay or obfuscate than it is to defend.

[¶ 19] Appellants also argue that their appearance and participation in the related proceedings initiated by Jackson Lum-

ber is evidence of an intent to defend this action. Appellants cite *Press v. Forest Laboratories, Inc.*, 45 F.R.D. 354 (S.D.N.Y.1968) in support of their argument. In that case, the plaintiff unsuccessfully sought to amend his complaint to add other defendants. The plaintiff then filed a second action while the first was still pending. The second complaint was identical to the first except that it added the defendant's attorney as a party and raised additional allegations of unethical conduct and libel against the attorney. Defendant's attorney, who had responded to the first complaint, did not respond to the second complaint; instead, he commenced a proceeding against plaintiff's attorney before the state bar association. A default judgment was ultimately entered against the defendants for their failure to respond to the second complaint. On the defendant's motion, the district court set aside the default judgment. The court held that the two actions were essentially one and the same because the dispute in the second arose out of the activities surrounding the first. Therefore, the court held that the contacts in the first action constituted an appearance in the second action. 45 F.R.D. at 356–57. Appellants claim that an almost identical circumstance exists in this case. Appellants point out that they served an answer on DBM in the Jackson Lumber proceeding three days before DBM moved for an entry of default in this case. They also note it is undisputed that phone conversations and correspondence took place in this case in the time period before an answer was due. In addition, Appellants allege that Hatch mentioned possible consolidation of the two actions. According to Appellants, these facts and circumstances indicate an intent to defend and the right to notice under Rule 55(b)(2).

[¶ 20] The *Press* case is clearly distinguishable on its facts from the situation before us in this case. The Tenth Circuit has described the holding in *Press:*

> That case stands for the proposition that where two actions have been filed and plaintiff knows that counsel who appeared for the defendants in the first action also represents the same defendants in the second action where no formal appearance is made, by legal construction, there is a technical appearance under Rule 55(b)(2) requiring notice.

*Gomes v. Williams*, 420 F.2d 1364, 1367–68 (10th Cir.1970). The distinguishable element between this case and *Press* is that Appellants were not represented by the same counsel in both actions at the time the motion for entry of default was filed. In the Jackson Lumber action, Appellants had retained local counsel after their request for an extension was rejected. In this case, Appellants did not hire local counsel after the complaint was filed. Instead, Hatch represented Appellants' interest. Eventually, Appellants hired the same local law firm to represent them in this case *after* the entry of default and the default judgment had been entered. Simply appearing in a related action is not necessarily an indication of an intent to defend. A defendant must take some steps to defend itself. Here, Appellants did not hire a local firm to represent themselves in this case although they knew Hatch was not licensed to practice in this state. Appellants' actions in this case and in the companion case are not sufficient to constitute an appearance under Rule 55(b)(2).

[¶ 21] Finally, Appellants raise a public policy argument. There are two competing policy considerations that guide a decision to set aside a default judgment. *Vanasse*, 847 P.2d at 997. "The justice system and litigants have an interest in the finality of judgment and efficiency in litigation. However, this Court has long recognized that 'default judgments are not favored in the law' and '[i]t is preferable that cases be tried on their merits.'" *Id.* (quoting *Carlson v. Carlson*, 836 P.2d 297, 301 (Wyo.1992)). Appellants contend that the policy consideration favoring the determination of cases on their merits should prevail here because the related controversy filed by Jackson Lumber is still pending. Appellants argue that deciding both of these cases together would be more likely to promote judicial efficiency and finality of judgments than would affirming the entry of default and default judgment.

[¶ 22] In addressing the policy considerations underlying entries of default and default judgments we have said:

Traditionally, default judgments were strongly disfavored; however, 'this court has moved away from the traditional position * * *.' The old formulas—a harsh sanction, drastic, should be imposed only as a last resort, for example when other, less drastic remedies prove unavailing, etc.—are still at times intoned. The new practice, however, is different. The entry of a default judgment is becoming * * * a common sanction for late filings by defendants * * *.

*Vanasse*, 847 P.2d at 1000 (quoting *Matter of State Exchange Finance Company*, 896 F.2d 1104, 1106 (7th Cir.1990)). In regard to a parties' failure to answer, we have said:

[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.

*Vanasse*, 847 P.2d at 1000 (quoting *Cessna Finance Corporation v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir.1983)) (citations omitted). With that background, we answer Appellants argument by quoting the Supreme Court of Ohio:

A defendant's right to force a plaintiff to prove his or her claim depends upon the defendant's compliance with the Civil Rules and the timely filing of an answer to the complaint. Otherwise, the sanctions for noncompliance would lose their deterrent effect. Even though we recognize that it is preferable to hear a case upon its merits, the rules of procedure must be applied consistently, and [Appellants'] noncompliance cannot be overlooked. * * * However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment.

*Davis v. Immediate Medical Services, Inc.*, 80 Ohio St.3d 10, 684 N.E.2d 292, 296–97 (Ohio 1997) (citations omitted).

*Default Judgment*

 [¶ 23] The district court entered a default judgment for $299,836.19, the amount requested for damages in DBM's complaint. We conclude that the district court erred in finding the damages liquidated and reverse the default judgment.

 [¶ 24] W.R.C.P. 55(b)(2) provides, in part:

If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by statute.

The court's decision whether to hold a hearing is within its discretion:

The scope of discretion afforded the trial court under the rule, however, does not extend to the entry of a default judgment where the damages are not liquidated or articulated with certainty. In *Adel* [*v. Parkhurst*], 681 P.2d [886] at 892 [Wyo. 1984], we said:

The burden, however, is upon those seeking more than mere nominal damages to prove their damages. The requirement of Rule 55(b)(2), W.R.C.P., of a hearing with respect to damages which are not liquidated is consistent with the rule of those cases. The default permitted by a defendant does not concede the amount demanded for unliquidated damages.

(Citations omitted). See also *Midway Oil Corporation v. Guess*, 714 P.2d 339, 346 (Wyo.1986) (quoting in part and applying the above principle).

*Halberstam v. Cokeley*, 872 P.2d 109, 112–13 (Wyo.1994). "Damages are liquidated when they are certain or, by computation, made certain." *Id.* It is an abuse of discretion for a court to enter a default judgment on damages that are unliquidated. *Id.; see also, Midway Oil Corporation v. Guess*, 714 P.2d 339, 345 (Wyo.1986).

[¶ 25] The burden to prove the amount of damages was on DBM. Damages may be established by affidavit or testimony. *Whitney*, 892 P.2d at 795; *Midway Oil*, 714 P.2d at 345–47; *Halberstam*, 872 P.2d at 113. In this case, DBM submitted an affidavit from its attorney, DeFazio. With respect to damages, the affidavit states: "This complaint requested relief in a sum certain amount of $299,836.19 (Two Hundred Ninety Nine Thousand, Eight Hundred Thirty Six Dollars and 19/100)." DBM's president also filed an affidavit, which stated: "I provided Mr. DeFazio with invoices which justify my claim for $299,836.19." Similarly, in his testimony, the president referenced the total amount of damages and indicated he had sent itemized invoices to Appellants. This is the only evidence produced by DBM in support of its damages claim. DBM did not offer an itemization of the project costs, the invoices referenced by the president or any evidence of any kind to support the claim of damages. A bald assertion of total damages without supporting evidence is insufficient to establish that damages were liquidated. *Halberstam*, 872 P.2d at 113. Likewise, DBM's statement in the complaint and in their attorney's affidavit is insufficient to establish damages because they are merely unsupported declarations. The default judgment and the lien foreclosure based on the monetary damage award are, therefore, reversed and the matter is remanded for further proceedings.

[¶ 26] However, having upheld the default judgment, we note the only matter for consideration on remand is the actual cost of the work performed by DBM. Appellants are foreclosed from arguing any defenses to the claims of breach of contract, unjust enrichment, or lien foreclosure to defeat the claim for damages.

## CONCLUSION

[¶ 27] The district court did not abuse its discretion when it declined to set aside the entry of default. The default judgment, however, is reversed and remanded for further proceedings for DBM's failure to prove damages.