# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 102

APRIL TERM, A.D. 2014

*August 15, 2014*

RDG OIL & GAS, LLC, a Nevada limited liability company,

Appellant
(Defendant),

v.

S-14-0052

JAYNE MORTON LIVING TRUST,

Appellee
(Plaintiff).

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
>    Patrick G. Davidson and Matthew R. Sorenson of Daly Davidson & Sorenson, LLC, Gillette, WY.  Argument by Mr. Sorenson.

*Representing Appellee:*
>    Anthony T. Wendtland of Wendtland & Wendtland, LLP, Sheridan, WY.

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

\*Chief Justice at time of oral argument.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   Dan C. Morton, predecessor in interest to the Jayne Morton Trust, successfully bid on several federal oil and gas leases in Natrona and Johnson counties. To develop these leases Morton sought the assistance of RDG Oil and Gas, LLC and in 2005 the parties entered into two agreements for the development of the leases. In 2012 the Jayne Morton Living Trust filed a breach of contract claim against RDG to which it did not respond. The district court entered a default judgment against RDG which it eventually moved to set aside. The district court denied its motion and this appeal followed.

## ISSUE

[¶2]   RDG presents one issue for our review:

> Whether the district court abused its discretion in denying RDG's motion to set aside the entry of default and the entry of default judgment?

## FACTS

[¶3]   Dan C. Morton successfully bid on several federal oil and gas leases in Natrona and Johnson counties. To develop these leases he sought the assistance of RDG Oil and Gas, LLC. The parties entered into two separate agreements to further develop the leases.

[¶4]   The first agreement pertained to federal oil and gas lease WYW 141812 (Agreement 1). This agreement required RDG to re-complete three wells (Blough 1, Blough 2, and Catterson). RDG also agreed to drill one horizontal well in the Ten Sleep formation in 2005. After the re-completion, and in the event the horizontal well resulted in production, RDG and Morton would determine how to proceed. If RDG chose not to continue with development, RDG agreed to assign all undeveloped acreage back to Morton and RDG would then retain all interest in those lands where production was obtained.

[¶5]   The second agreement is referred to as the "Tisdale Prospect Agreement." Under this agreement RDG agreed to purchase the prospect acquired by Morton. RDG was to reimburse Morton for his costs in acquiring the Tisdale lease and RDG agreed to drill one well and "fully develop" the Tisdale prospect. Development was to occur unless one of two conditions existed: (1) the inability to secure adequate access and surface rights, or (2) the economic viability of the field.

[¶6]   In 2012 Morton's successor in interest, the Jayne Morton Living Trust ("the Trust"), filed a complaint in the district court for an alleged breach of contract of both

1

agreements. Morton Trust alleged that as to Agreement 1, RDG failed to re-complete the Blough 2 and Catterson wells, failed to obtain production from the leases in question, failed to pursue a continuous drilling program, and failed to drill the Horizontal Well. The Trust also alleged that RDG failed to tender taxes to the State of Wyoming which in turn created a risk that the leases could be lost to foreclosure. As to the Tisdale Agreement the Trust asserted that RDG "lost" certain leases involved by virtue of non-payment of rentals and non-development. Also, the Trust alleged that RDG failed to drill and develop the Tisdale Prospect as contemplated under the agreement and allowed certain leases to revert back to the federal government.

[¶7] The complaint that alleged breach of contract was served on RDG's registered agent, WyomingRegisteredAgent.com, Inc. A return of service indicates that service was obtained on Sarah Garcia on November 2, 2012 at a place of business called WyoRegisteredAgent, located at 1621 Central Avenue, Cheyenne, Wyoming. The complaint and summons were not forwarded to RDG. RDG's answer was due, in accordance with W.R.C.P. 12(a), on or before November 26, 2012. That day came and went without any response from RDG and on November 28, 2012 the clerk made an entry of default. Notice of entry of default was served on RDG by mailing the notice to RDG's same record agent for service of process. The Trust also moved for entry of default against RDG on the same day as the court and served copies on RDG at the offices of the same record agent.

[¶8] On December 28, 2012 the district court entered a default judgment against RDG. Again, the notice of judgment was served on RDG at the same office of its record agent. It was not until mid-January 2013 that RDG became aware of the default judgment. Over six months later RDG filed a motion to set aside the entry of default and the default judgment.

[¶9] The district court set a hearing on RDG's motions for October of 2013. The Trust filed its response on August 23, 2013. A trial was held October 8, 2013, whereafter the district court denied RDG's motions. RDG filed its Notice of Appeal on December 13, 2013.

**STANDARD OF REVIEW**

[¶10]     "Decisions resolving motions for setting aside the entry of default or a default judgment are made in the exercise of sound discretion by the trial court." *Fluor Daniel, Inc. v. Seward*, 956 P.2d 1131, 1134 (Wyo. 1998).

Rules 55(c) and 60(b), W.R.C.P., are remedial and are intended to promote decisions on the merits when possible. A trial court has wide judicial discretion to

2

grant or deny a defendant's motion under these rules. We will not disturb the exercise of that discretion unless appellant demonstrates that the trial court abused it and was clearly wrong.

*Nowotny v. L & B Contract Indus.*, 933 P.2d 452, 460 (Wyo. 1997) (quoting *Claassen v. Nord*, 756 P.2d 189, 193 (Wyo. 1988)) (internal citations omitted). The proponent of a motion to set aside default judgment has the burden of proving that he is entitled to relief. *Lykins v. Habitat for Humanity, The Heart of Wyo., Inc.*, 2010 WY 118, ¶ 10, 237 P.3d 405, 408 (Wyo. 2010).

*Rosty v. Skaj*, 2012 WY 28, ¶ 27, 272 P.2d 947, 956-957 (Wyo. 2012).

## DISCUSSION

[¶11] RDG argues on appeal that the district court abused its discretion when it denied RDG's motion to set aside the entry of default and default judgment. RDG contends that because RDG's registered agent did not forward the summons and complaint or subsequent pleadings to RDG that its failure to then answer was for good cause and/or a result of excusable neglect. In order to prevail on appeal RDG has the burden of showing that the district court abused its discretion. We conclude that RDG has not met its burden.

[¶12] We have explained the entry of default before:

Entry of default is a clerical act performed by the clerk of court and is not a judgment. W.R.C.P. 55(a). The entry of default forecloses the defaulting party from making any further defense or assertion with respect to liability or any asserted claim. *Vanasse v. Ramsay*, 847 P.2d 993, 996-97 (Wyo. 1993) (quoting *Spitzer v. Spitzer*, 777 P.2d 587, 592 (Wyo. 1989)). "Although the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief." *Id.*

*Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 9, 45 P.3d 647, 651 (Wyo. 2002).

[¶13] The procedure for setting aside an entry of default is set forth in W.R.C.P. 55(c):

For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

To determine whether a default judgment may be set aside for good cause Wyoming has established a three-factor test. The three factors that this Court has held are relevant to this determination are: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *M & A Const. Corp. v. Akzo Nobel Coatings, Inc.*, 936 P.2d 451, 454-55 (Wyo. 1997).

[¶14] Likewise, W.R.C.P. 60(b) provides the procedure for setting aside a default judgment, in pertinent part:

> (b) *Other reasons.* – On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence surprise, or excusable neglect[.]

This Court has explained "excusable neglect" as it has appeared in our jurisprudence as follows. "Excusable neglect is measured on a strict standard to take care of genuine emergency conditions, such as death, sickness, undue delay in the mails, . . . and other situations where such behavior might be the act of a reasonably prudent person under the circumstances." *Crossan v. Irrigation Development Corp.*, 598 P.2d 812, 813 (Wyo. 1979) (*quoted in Chevron U.S.A., Inc., v. Department of Revenue*, 2007 WY 62, ¶ 9, 155 P.3d 1041, 1043 (Wyo. 2007)).

[¶15] Whether it be due to excusable neglect, good cause, or otherwise, this Court has consistently applied strict standards in both affirming and reversing the entry of default and default judgments. In *Vanasse v. Ramsay*, 847 P.2d 993, 997-98 (Wyo. 1993), this Court reversed a trial court decision setting aside entry of default where the defaulted party had relied upon its insurance company to answer the complaint after service and had not ensured that a response was timely filed. We stressed that a movant's lack of diligence can manifest itself in a number of ways:

> We find a number of reasons why the district court should not have set aside the default judgment in this case, the first being that the defendants did not bring themselves within Rule 60(b) as required by *U.S. Aviation*. The district court reiterated the reasons acceptable under 60(b)(1) and found there to be "no such showing in this case by the Defendants." Defendants argue primarily that the on-going settlement

4

negotiations excuse the failure to file an answer until fifty-nine days after petitioner's complaint was filed and constitute "excusable neglect" or "surprise" under Rule 60(b). We find, as did the district court, that defendants cannot support this claim. *See*, *Matter of Injury to Seevers*, 720 P.2d 899, 903 (Wyo. 1986) ("failure to consult an attorney for nearly two months is not such excusable neglect as would justify relief"); *Booth*, 548 P.2d at 1254 (failure to hire an attorney until 53 days following service of the complaint would not constitute excusable neglect); *Zuelzke Tool and Eng'g v. Anderson Die Castings*, 925 F.2d 226, 229 (7th Cir. 1991) ("where a party willfully, albeit through ignorance or carelessness, abdicates its responsibilities, relief from judgment under Rule 60(b) is not warranted"); *United States v. Topeka Livestock Auction, Inc.*, 392 F. Supp. 944, 950-51 (N.D. Ind. 1975) ("It has been said that ongoing settlement negotiations are not a sufficient reason for a failure to file an answer."); *Fed. Sav. and Loan Ins. Corp. v. Kroenke*, 858 F.2d 1067, 1071 (5th Cir. 1988) (claim of "surprise" or "excusable neglect" was meritless where party failed to file an answer in reliance upon settlement negotiations); *Atchison, Topeka and Santa Fe Ry. v. Matchmaker Inc.*, 107 F.R.D. 63, 65 (1985) ("It is well established that failure to seek advice of counsel does not constitute excusable neglect."); *Asso. Press v. J.B. Broadcasting*, 54 F.R.D. 563, 564 (1972) (no adequate excuse shown for failure to refer matter to counsel). We hold that "statutes should not be construed to be meaningless" and we would be "stretching reality to the breaking point to find mistake, inadvertence, surprise, or excusable neglect." *U.S. Aviation*, 664 P.2d at 126.

*Vannase*, 847 P.2d at 997-98.

[¶16] In *Multiple Resort Ownership Plan, Inc. v. Design-Build-Manage, Inc.*, 2002 WY 67, ¶ 14, 45 P.3d 647, 652 (Wyo. 2002), we held that the defendant's belief that he had been granted an extension of time in which to file an answer did not constitute mistake, inadvertence, or excusable neglect entitling him to an order setting aside default judgment. We said it was not reasonable for the defendant to assume that he had an open extension of time in which to file an answer based solely upon a phone conversation with no verbal or written confirmation from the plaintiff and in the face of the explicit requirements of the Wyoming Rules of Civil Procedure. "The concept of time limitations for filing pleadings with the court is a fairly basic one of legal practice. [The

5

defendant]'s reliance on his belief in an open-ended extension was simply not reasonable." *Id.*

[¶17] Similarly, this Court found "unreasonable MES' expectation and belief that Countrywide was representing its interest and filing an answer on its behalf" in *Countrywide Home Loans, Inc. v. First Nat. Bank of Steamboat Springs, N.A.*, 2006 WY 132, ¶ 27, 144 P.3d 1224, 1232 (Wyo. 2006). There, we affirmed the district court's denial of the appellant's request to set aside the default judgment due to appellant's simple failure to answer the complaint. Other cases are also illustrative: *Orosco v. Schabron*, 9 P.3d 264, 267 (Wyo. 2000) (an affidavit of an attorney alleging an undiagnosed disorder not sufficient to show incapacity for purposes of excusable neglect). *Fluor Daniel (NPOSR), Inc., v. Seward*, 956 P.2d 1131, 1134-35 (Wyo. 1998), *cert. denied*, 525 U.S. 983, 119 S.Ct. 507, 142 L.Ed. 2d 402 (1998) (an error by an attorney's staff member is not excusable neglect); *Chevron USA, Inc. v. Department of Revenue*, 2007 WY 62, ¶ 9, 155 P.3d 1041, 1043 (attorney's office mistake calendaring deadline not excusable neglect); *Platt v. Creighton*, 2007 WY 18, ¶ 8, 150 P.3d 1194, 1199 (Wyo. 2007) (default upheld where counsel failed to timely file a document where the court had not granted a formal extension, although both parties agreed to the extension).

[¶18] Also in the context of cases involving entry of default and default judgments, we have set out the analytical process to be applied by the district court in exercising its discretion whether to set aside an entry of default:

> The court first must consider whether the filed motion articulates a reason for relief under Wyo. R. Civ. P. 60, and that is a question of law to be reviewed for correctness. . . . When an appropriate reason is set forth, the exercise of discretion in granting or denying relief depends upon the facts of the case. In making that decision, the trial court is to consider whether the moving party established the articulated grounds for relief and demonstrated a meritorious defense. Even if these conclusions are in the affirmative, the trial court still must determine whether the plaintiff will be prejudiced and whether culpable conduct on the part of the defendant resulted in the default. Our review of this sequence of determinations by the trial court is limited to a determination of whether in resolving these questions the trial court abused its discretion. *Carlson v. Carlson*, 836 P.2d 297, 301 (Wyo. 1992); *followed in Whitney*, 892 P.2d at 794; *Vanasse*, 847 P.2d at 996.

*Fluor Daniel (NPOSR)*, 956 P.2d 1131 at 1134.

[¶19]  In this case the district court concluded that RDG was not diligent or prudent in relation to its registered agent and denied RDG's motion to set aside the entry of default and the default judgment.  The district court explained in its findings:

> The Court finds that [RDG] has not met its burden [of] showing that their failure to respond to [the] complaint was due to "excusable neglect."  The court notes that failing to pay for the service of a company's listed registered agent is not something which a "reasonably prudent person under the circumstances" would do.  The Court finds that [RDG's] actions do not fall within the category of behaviors which may be termed "excusable neglect."  Such action is pure neglect, not excusable.

[¶20]  The court went on to say about the three-factor test that the

> Plaintiff would be prejudiced if the default was set aside.  Second, [RDG] is seeking to assert lack of notice as meritorious defense in this case.  The Court finds that [RDG] has failed to meet the requisite burden for establishing the existence of a meritorious defense.  Lastly, the Court finds no culpable conduct on behalf of [RDG], but since [RDG] has failed to establish the two preceding factors of the test, the burden of proof has not been met.

[¶21]  Our review of the record shows that the complaint was served in person by a process server to Sarah Garcia of WyomingRegisteredAgent.com on November 6, 2012.[1]  At the time of that service WyomingRegisteredAgent.com was the record agent for service of process for RDG in Wyoming, although RDG had actually been administratively dissolved as an authorized foreign limited liability company since March 14, 2009.  Similarly, RDG had allowed its Nevada limited liability company registration to expire and administratively dissolved the company on July 31, 2011.  RDG had admittedly negligently forfeited all of its rights and privileges to conduct any business in Wyoming effective March 14, 2009 under Wyo. Stat. Ann. § 17-29-705(a)-(d) (LexisNexis 2010 Supp.).

[¶22]  Conveniently, under Wyo. Stat. Ann. § 17-29-705(c)(iii)(C) (LexisNexis 2013), as a now totally defunct Wyoming entity, RDG could not be served with the Trust's complaint and summons by mail to the Wyoming Secretary of State with the Secretary acting as the agent for process.  In fact, the only record address for RDG in the fall of

---

[1] Originally, Garcia testified in an affidavit that she had no record of the complaint or summons being served on RDG.

2012 was the address for RDG's last record agent for service of process shown in the Wyoming Secretary of State's records. *See* Wyo. Stat. Ann. § 17-16-1531(e) (LexisNexis 2013) – "[r]evocation of a foreign corporation's certificate of authority does not terminate the authority of the registered agent of the corporation." RDG's last recorded designated commercial registered agent name and address was WyomingRegisteredAgent.com located at 1621 Central Ave., Cheyenne, WY 82001.

[¶23] Further complicating things for RDG is evidence in the record that shows that at the time of service RDG's status as a current and paying client of WyomingRegisteredAgent.com had been suspended because RDG had not paid WyomingRegisteredAgent.com for any of its registered agent service since 2011. Sarah Garcia of WyomingRegisteredAgent.com testified under oath that RDG's account was in default and that RDG mail was being returned to sender. She also testified that she gave the documents served to her by the process server to Neil Thatcher, the mail clerk. It is unclear what happened to the documents from that point. What is clear from the record is that RDG's account with WyomingRegisteredAgent.com was not current.

[¶24] As previously noted, in order to prevail on appeal, RDG must show "good cause" to set aside the default judgment under Rule 60(b). Referring back to the three factors we listed above, the district court's conclusion supports its exercise of discretion in denying RDG's motion to set aside the judgment. First, as to prejudice to the plaintiff, we conclude that the Trust would be prejudiced if the default was set aside. RDG filed its motion to set aside the entry of default a full six months after its entry, and the Trust relied upon the entry of default to its detriment. Furthermore, RDG does not meet its burden of showing it has a meritorious defense in this instance. The record clearly indicates that RDG lost all of the relevant federal oil and gas leases needed by the parties to have any developable minerals. Also, RDG readily admits that beginning in mid-March of 2009 RDG did not maintain the legal right under Wyoming law to conduct any oil and gas business in Wyoming. Thus, RDG was unable as a matter of law to legally carry out its obligations to the Trust under either of the two oil and gas development agreements after March 14, 2009. Another default judgment against RDG was also prohibitive to its further developing the two agreements in this case. To that end and, finally, we conclude that RDG's conduct was to blame leading up to the default. The record indicates repeatedly that RDG mishandled its business from March 2009 through 2013 such that it failed to pay for its registered agent's services or even communicate with its registered agent during that time.

[¶25] We also conclude, as did the district court, that this is not an instance of excusable neglect. Rather, this is just simply neglect. The failure to answer the complaint seems due more to carelessness or a result of not attending to business. RDG failed to pay for the services of its registered agent or appoint a new agent. Additionally, that RDG allowed its LLC registration to expire ostensibly so it could not be served by having the Wyoming Secretary of State serve as its agent for service of process seems intentional.

Finally, RDG acknowledges but does not explain why a delay of six months occurred after learning of the default and before filing its motion to set aside the entry and judgment of default. As other courts have stated, failure to attend to business is not excusable neglect. *CMS Jonesboro Rehabilitation, Inc.* v. *Lamb*, 306 Ark. 216, 812 S.W.2d 572 (1991).

## CONCLUSION

[¶26] We affirm the district court's order denying RDG's motions to set aside the default and default judgments.